UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: SUBPOENAS TO PLAINS ALL AMERICAN PIPELINE, L.P., *et al.* § § § § U.S. COMMODITY FUTURES TRADING § COMMISSION V. PARNON ENERGY INC., § *et al.*, CASE NO.: § 1:11-CV-03543-WHP (S.D.N.Y.); § IN RE: CRUDE OIL COMMODITY FUTURES § LITIGATION, CASE NO.: § 1:11-CV-03600-WHP (S.D.N.Y.) § | MISCELLANEOUS ACTION H-13-2975 |

**MEMORANDUM OPINION & ORDER**

In this consolidated action, four motions are pending before the court: (1) a motion for reconsideration of the court's order quashing the U.S. Commodity Futures Trading Commission's ("CFTC") deposition subpoenas served on Plains All American Pipeline, L.P. ("Plains All American"), Thomas Coiner, Keith Jalbert, John vonBerg, and Hugo Zagaria (collectively, "Plains"), Dkt. 2;[1] (2) a motion for reconsideration of the court's order quashing the Class Plaintiffs' deposition subpoenas served on Plains, Dkt. 17;[2] (3) the CFTC's motion to compel Plains All American to produce documents requested in the November 8, 2013 subpoena, Dkt. 11; and (4) a motion to quash the Defendants' deposition subpoenas served on John vonBerg and Hugo Zagaria.[3] Dkt. 13.

---

[1] The CFTC issued the deposition subpoenas for testimony to be used in its prosecution of a civil enforcement action in New York alleging violations of the Commodity Exchange Act. *See* Compl., *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.,* No. 1:11-cv-3543-WHP (S.D.N.Y. filed May 24, 2011) (the "enforcement action").

[2] The "Class Plaintiffs" are the named Plaintiffs in the putative class action in New York that is a parallel proceeding to the enforcement action. The named Plaintiffs are Gregory Galan, Todd Kramer, John Losordo, Jr., Adams Affiliates, Inc., FTC Capital GmbH, FTC Futures Fund SICAV, and FTC Futures Fund PCC, Ltd. *See* Consol. Am. Class Action Complaint, *In re: Crude Oil Commodity Futures Litig.*, No. 1:11-cv-3600-WHP (S.D.N.Y. May 29, 2012), ECF No. 66 (the "class action"); Dkt. 17, Ex. A (copy of consolidated amended class action complaint).

[3] The enforcement and class action Defendants are Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose, and James T. Dyer (the "Defendants").

All of the subpoenas seek potentially discoverable information for the enforcement and class actions currently pending in the Southern District of New York before Judge William Pauley. In both cases, the plaintiffs allege that the Defendants unlawfully manipulated spread prices for West Texas Intermediate ("WTI") crude oil futures contracts traded on the New York Mercantile Exchange ("NYMEX") in the spring of 2008. Dkt. 5, Ex. E ¶¶ 5; Dkt. 17, Ex. A ¶ 2. The subpoenas requested documents and depositions before January 31, 2014, when discovery is set to close in the enforcement action. Given this rapidly approaching deadline, the court has expedited its consideration of the four motions, responses, replies, record, and applicable law.

After reviewing the motions for reconsideration, the court finds that the deposition subpoenas should not have been quashed without the benefit of a response from the CFTC and the Class Plaintiffs. Accordingly, the motions for reconsideration are **GRANTED**, and the court's December 23, 2013 orders are **VACATED**. For the reasons explained below, Plains's motions to quash (Dkts. 1, 13, and 15) are **DENIED**, and the CFTC's motion to compel (Dkt. 11) is **GRANTED**.

## I. BACKGROUND

In late 2007 and early 2008, the CFTC alleges that the Defendants used a dominant position in the WTI crude oil physical market at Cushing, Oklahoma[4] to manipulate price spreads in the separate NYMEX WTI crude oil futures market. Dkt. 5, Ex. E (CFTC complaint) at ¶¶ 3–5; *see also CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 236–38 (S.D.N.Y. 2012) ("*Parnon I*"). This complex scheme purportedly took advantage of tight WTI oil supplies at Cushing and artificially

---

[4] Cushing, Oklahoma ("Cushing") is a crude oil trading hub for crude oil and serves as a major point of reference for price settlement of light, sweet crude derivatives contracts on the NYMEX market. Cushing's importance in oil trading is well-recognized, as a network of pipelines carry crude oil from oil refineries throughout the continent to Cushing, where it is stored pending delivery. As one court explained, "supply and demand factors at the Cushing hub have a potential impact not only upon the price levels of crude oil at Cushing and its surrounding areas, but also throughout the entirety of the crude oil market." *In re Crude Oil Commodity Litig.*, No. 06-cv-6677, 2007 WL 1946553, at **1–2 (S.D.N.Y. June 28, 2007).

increased the price of crude oil in the physical and derivative markets throughout the United States between January and April 2008. *Parnon I*, 875 F. Supp. 2d at 239–40.

The scheme likely would have continued for a longer period, according to the CFTC, but on or about April 17, 2008, Defendants received an administrative subpoena and learned that their trading activities were under investigation. Dkt. 5, Ex. E ¶ 51. The CFTC's investigation extended to multiple non-parties in the national crude oil market, and the CFTC obtained millions of documents from these companies, including Plains All American, both voluntarily and pursuant to administrative subpoenas. Dkt. 17 at 2. The CFTC also obtained testimony in August 2010 from market participants, including Messrs. vonBerg and Zagaria.[5] Dkt. 1, Ex. A (Prout Declaration) ¶ 11.

Three years after the first subpoena was issued, the CFTC filed the enforcement action against Defendants in May 2011, alleging that their actions violated Sections 6(c), 6(d), and 9(a)(2) of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 6(c), 6(d), and 13(a)(2). Dkt. 5, Ex. E ¶ 5. These sections proscribe actual or attempted manipulations of the market price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market such as NYMEX. *Id.* ¶ 54. The CFTC alleges that Defendants amassed tens of millions of dollars in illicit profits through their trading activities. *Id.* ¶ 52. The class action followed soon after the enforcement action's filing, with the Class Plaintiffs alleging that the scheme violated both the CEA and section 2 of the Sherman Act. Dkt. 17 at 1–2.

As discovery commenced in both actions, Defendants requested that the CFTC produce the documents it had obtained from non-parties as part of its administrative investigation. *Id.* at 2. The

---

[5] VonBerg is Plains All American's Senior Vice President of Commercial Activities, and he began working at Plains All American in 2002. Dkt. 13, Ex. A (Prout Declaration) ¶ 3. Zagaria serves as Plains All American's Director of Foreign Crude Supply, and he began working for the company in 2004. *Id.*

CFTC did so, producing certain documents from Plains All-American and others, which were subject to the protective order issued in the enforcement action. *Id.* The Class Plaintiffs responded to this production by seeking the same documents for use in the class action. *Id.* However, before Defendants' produced any third-party documents, Judge Pauley permitted affected non-parties to brief and argue their objections to such production. *Id.* at 2–3. On October 25, 2013, Judge Pauley overruled the non-parties' objections, finding that the documents were relevant and discoverable. Dkt. 17, Ex. B; *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, Nos. 1:11-cv-3543-WHP, 1:11-cv-3600-WHP, 2013 WL 5882921, at *4 (S.D.N.Y. Oct. 25, 2013) ("*Parnon II*"). To address the renewed confidentiality concerns, Judge Pauley ordered the parties to submit a modified protective order, strengthening document protections. *Id.* The non-parties, including Plains All American, immediately appealed Judge Pauley's order to the Second Circuit Court of Appeals, and they also requested that Judge Pauley stay his order pending appeal. Dkt. 17 at 4. On November 8, 2013, Judge Pauley denied the stay request.[6] Dkt. 17, Ex. D.

Immediately following Judge Pauley's stay denial, the CFTC issued two subpoenas, for depositions and documents, to Plains All American on November 8. *See* Dkt. 1, Ex. 2; Dkt. 11, Ex. A. Plains served the CFTC with its objections to the documents subpoena on November 22, 2013. Dkt. 11, Ex. C. On December 3, 2013, the Class Plaintiffs issued a deposition subpoena to Plains All American, which was substantively identical to the CFTC's subpoena. Dkt. 15, Ex. 2. On December 13, six more subpoenas were issued, by the CFTC and Defendants, to Messrs. Coiner, Jalbert, vonBerg, and Zagaria for their testimony related to trading activities in the relevant markets.

---

[6] The non-parties then sought a stay from the Second Circuit, and the appellate court issued a temporary stay on November 20, 2013. Dkt. 17, Ex. E at 2. After further consideration, on December 10, 2013 the Second Circuit denied the non-parties' request for a stay and expedited review of the October 25 order. *Id.* Thus, Judge Pauley's decision remains on appeal under the Second Circuit's normal appellate review schedule.

Dkt. 1, Ex. 3 (CFTC's subpoena to Coiner); Dkt. 1, Ex. 4 (CFTC's subpoena to Jalbert); Dkt. 1, Ex. 5 (CFTC's subpoena to vonBerg); Dkt. 1, Ex. 6 (CFTC's subpoena to Zagaria); Dkt. 13, Ex. B (Defendants' subpoena to vonBerg); and Dkt. 13, Ex. C (Defendants' subpoena to Zagaria). Finally, on December 18, the Class Plaintiffs subpoenaed the traders' testimony for use in the class action. *See* Dkt. 15, Ex. 3 (Coiner); Dkt. 15, Ex. 4 (Jalbert); Dkt. 15, Ex. 5 (vonBerg); and Dkt. 15, Ex. 6 (Zagaria). In total, thirteen subpoenas are at issue, including two identical subpoenas for Plains All American's testimony by a corporate representative, one subpoena for Plains All American's documents, and ten subpoenas for the four traders' testimony.

Then, after the subpoena flurry concluded, the challenges began. On December 20, 2013, Plains moved to quash the deposition subpoenas issued by the CFTC and Class Plaintiffs, Dkts. 1, 15, and the court granted the motions on December 23, 2013. Dkts. 2, 16. On January 3, 2014, the CFTC moved for reconsideration of the court's order, and the Class Plaintiffs filed a similar motion for reconsideration on January 13. Dkts. 5, 17. As to the documents subpoena, the CFTC moved to compel on January 7, 2014. Dkt. 11. Finally, on January 14, Plains All American, Zagaria, and vonBerg moved to quash the Defendants' subpoenas of vonBerg and Zagaria's testimony. Dkt. 13. After an expedited briefing schedule, the issues are ripe for decision.

## II. GOVERNING LAW

Under Rule 26 of the Federal Rules of Civil Procedure, the scope of civil discovery is broad, but not unlimited: "[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* The breadth of this rule, however, is mitigated by certain protections

5

against disclosure found in Rule 45 governing the scope of subpoenas issued to litigation non-parties. Rule 45 contains multiple grounds for quashing or modifying a subpoena, some of which are mandatory while others are permissive. The subsection relevant to quashing or modifying a subpoena states as follows:

> (A) *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> > (i) fails to allow a reasonable time to comply;
> > (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> > (iv) subjects a person to undue burden.
>
> (B) *When Permitted*. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
>
> > (i) disclosing a trade secret or other confidential research, development, or commercial information; or
> > (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

FED. R. CIV. P. 45(d)(3).

Regarding burdensomeness, the movant bears the burden of persuasion that "compliance with the subpoena would be unreasonable and oppressive." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818–19 (5th Cir. 2004). This showing has been described as "heavy," and courts within this circuit consider six particular factors when determining whether a subpoena is unduly burdensome: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."

*Id.*; *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998). The requests are not viewed in a vacuum—the court may also take into account the facts of the underlying case, including the requesting party's need for the particular information and the importance of the litigation. *Wiwa*, 392 F.3d at 819. In other words, a court should give a wider berth of discovery to subpoenas that concern substantial national, rather than merely parochial, interests. Further, "if the person to whom the [] request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.*

In the case of a subpoena that seeks confidential or proprietary information, the court has discretion whether to allow the disclosure, and if so, under what conditions. *See M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 801–04 (S.D. Tex. 2010); *see also FieldTurf U.S.A., Inc. v. Tencate Thiolon Middle East, LLC*, No. A–12–MC–105, 2012 WL 844671, at *2 (W.D. Tex. Mar. 12, 2012). The moving party bears the burden to demonstrate that the subpoena seeks trade secrets or confidential information, and that the disclosure would be harmful to its interests. *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 390 (N.D. Tex. 2003). If the moving party makes this showing, the burden then shifts to the non-movant to demonstrate that the requested information is both relevant and necessary to the underlying litigation. *Id.* The court then balances the benefits from producing the information against the potential injury that could accrue to the producing party by the disclosure itself. *Id.*

With these general principles of law related to third-party discovery in mind, the court turns to its consideration of the thirteen subpoenas at issue in this case.

### III. ANALYSIS

The parties to the underlying cases have issued twelve subpoenas *ad testificandum* (deposition subpoenas) and one subpoena *duces tecum* (documents subpoena). The court considers the challenges to each subpoena type below.

### A.     *The Deposition Subpoenas*

As a threshold matter, the court agrees with the CFTC and Class Plaintiffs that the December 23 orders quashing the deposition subpoenas, Dkts. 2, 16, were prematurely granted. *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 555 (5th Cir. 2012). Those orders are therefore **VACATED**, and the court will evaluate all three motions to quash the deposition subpoenas on the merits with due regard to the parties' briefing and record evidence.

Plains objects to the deposition subpoenas on six grounds: (1) relevance; (2) burdensomeness; (3) disclosure of unretained expert opinions; (4) disclosure of confidential or proprietary information; (5) disclosure of cumulative or duplicative testimony; and (6) disclosure of information in violation of the Interstate Commerce Act ("ICA").[7]

**1.     Relevance**

Plains argues that the deposition subpoenas do not seek relevant information and exceed the scope of discovery under Rules 26 and 45. Dkt. 1 at 11. Plains contends that it had no dealings with Defendants during the relevant time period in 2007 and 2008, and thus Plains has no first-hand, discoverable evidence for the underlying litigation. *Id.* The court disagrees.

---

[7] Regarding all of the traders' subpoenas, Plains objects to their testimony on the first four grounds. As to vonBerg and Zagaria in particular, the objections also include the fifth ground. Lastly, the objections to the 30(b)(6) deposition include the first four grounds and the sixth ground, namely that the topics include shipper information protected from disclosure under the ICA.

8

In discussing the relevance of non-party documents regarding the WTI futures market, Judge Pauley stated the following in his October 25, 2013 order:

> [T]he WTI market's alleged switch between contango and backwardation is central to Plaintiffs' manipulation and monopolization claims. Far from being irrelevant, documents indicating the perceptions and reactions of "innocent" non-party traders are highly probative of whether this phenomenon occurred and how it impacted the market. Information about the non-parties' activities before and after the alleged manipulation is also relevant to provide a benchmark for activity in a non-manipulated market.

*Parnon II*, 2013 WL 5882921 at *3. Judge Pauley also found in an earlier order that to prove certain CEA claims, the CFTC's manipulation allegations based on market dominance depend on evidence relating to deliverable supply. *Parnon I*, 875 F. Supp. 2d at 245. Thus, Plains's role in the physical and futures market during the time period at issue, which would yield or could lead to the discovery of evidence regarding deliverable supplies and market conduct, is discoverable in the enforcement and class actions.

### 2. **Burdensomeness**

Rule 45 requires that when a party issues a subpoena, it must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). Plains contends that the CFTC has already placed it under severe burdens, after which the agency has issued twelve subpoenas related to this matter to Plains in the last six years. Plains alleges that it would take countless hours to prepare the witnesses for multiple deposition sessions, and they should not have to bear this burden as non-parties to the litigation. Dkt. 1, Ex. 1 ¶ 10.

While Plains will need to devote additional time to deposition preparation, the court is persuaded that the CFTC and Class Plaintiffs have taken sufficient steps to lighten Plains's burden when possible. For example, the CFTC has provided exemplar instant messages, emails, and audio

files that the traders' testimony is needed to authenticate.[8] Dkt. 5, Ex. C. The parties have also worked with Plains to cross-notice depositions of each trader to avoid multiple depositions of a single deponent. And the need for this testimony is heightened by the substantial national interests raised by the underlying litigation. The CFTC alleges that Defendants' alleged scheme artificially increased the physical and derivative price of WTI crude oil, a commodity that is central to the functioning of the world economy. The importance of the litigation cannot be overlooked in assessing the plaintiffs' need for the testimony against Plains's relative burdens.

The court has also reviewed the subpoenas' requests and the CFTC's reasons for the traders' depositions and concluded, under the Fifth Circuit's factors, that the subpoenas are reasonable. The plaintiffs seek testimony during a relatively discrete period of time regarding Plains's nominations process and firsthand observations of relevant market conduct. The subpoenas are not unduly burdensome.

### 3. Disclosure of Unretained Expert Opinions

Plains contends that the traders should not be forced to disclose expert opinions regarding the crude oil industry. Dkt. 1 at 15. Rule 45 permits the court to quash or modify a subpoena that seeks expert testimony from an unretained expert. FED. R. CIV. P. 45(d)(3)(B)(ii). However, the CFTC has stated that it is not seeking expert deposition testimony, and the court is satisfied with this explanation. The CFTC has demonstrated a compelling need for the traders' testimony regarding "unique first-hand information about the Defendants and the market during the time period relevant to the CFTC action." Dkt. 5 at 12.

---

[8] The court recognizes Plains's argument that authentication by the traders could be achieved in a less burdensome manner, including through a deposition on written questions. Dkt. 20 at 8. However, the CFTC also seeks this testimony for reasons beyond mere authentication, including the need for testimony regarding the traders' perceptions and reasoning for creating messages relating to certain market conduct in 2008. *See* Dkt. 5 at 12.

### 4. Disclosure of Confidential or Proprietary Information

As discussed above, the court may modify or quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 45(d)(3)(B)(i). Plains contends that the subpoenas should be quashed because they would force the disclosure of confidential information or trade secrets to competitor plaintiffs. Dkt. 5 at 12. However, after reviewing the *Parnon II* opinion and the amended protective order, the court agrees with Judge Pauley and the plaintiffs that Plains has not shown an identifiable risk that its information, albeit sensitive, will be used for improper business purposes in violation of the protective order. *See Parnon II*, 2013 WL 5882921, at *3 (approving a modification to the protective order that "requir[es] witnesses to execute a declaration of compliance before being shown highly confidential non-party information[, and which] will further ensure that sensitive information is not used for improper purposes"); Dkt. 5, Ex. B (Nov. 12 modified protective order) ¶ 2 ("In particular, Discovery Material may not be used for any commercial, business or other purpose.").

### 5. Disclosure of Cumulative or Duplicative Testimony

Plains objects to the six subpoenas, from the Class Plaintiffs, CFTC, and Defendants, for vonBerg and Zagaria's testimony on grounds that further testimony from these witnesses would be cumulative or duplicative and exceed the bounds of discovery under Rule 26. *See, e.g.*, Dkt. 1 at 12 (citing FED. R. CIV. P. 26(b)(2)(C)(i)). Plains contends that vonBerg and Zagaria's CFTC depositions in August 2010 during the administrative investigation were exhaustive, and no further examination should be permitted. *Id.* The CFTC responds that it has no intention of retreading ground that was previously covered in the 2010 depositions. The court takes the CFTC at its word.

The CFTC should be permitted to depose Messrs. vonBerg and Zagaria regarding relevant matters not covered at the previous depositions.

      **6.**      **Disclosure of Information in Violation of the ICA**

Lastly, Plains contends that the 30(b)(6) deposition subpoena is improper because its topics cover shipper information in violation of the ICA. Dkt. 1 at 13–14; 49 U.S.C. § 16103. That section, however, provides the following exception for disclosure pursuant to government requests: "This part does not prevent a pipeline carrier providing transportation under this part from giving information in response to *legal process* issued under authority of a court of the United States . . . ." 49 U.S.C. § 16103(b)(1) (emphasis added). Plains responds that "legal process" does not include subpoenas issued by an attorney, but Plains's position misconstrues the nature of a federal subpoena. Attorneys issue subpoenas as officers of the court under Rule 45, and a federal subpoena thus qualifies as "legal process" under the ICA. *Calabro v. Stone*, 224 F.R.D. 532, 533 (E.D.N.Y. 2004) ("Valid attorney-issued subpoenas under Rule 45(a)(3) operate as enforceable mandates of the court on whose behalf they are served."). Thus, Plains All American's disclosure of any shipper information during the corporate representative deposition, which it will attend pursuant to legal process, will not violate the ICA's statutory prohibition.

Plains's motions to quash (Dkts. 1, 13, and 15) are therefore **DENIED**. The only remaining issue is whether Plains All American must comply with the CFTC's November 8 documents subpoena, to which the court now turns.

**B.**    *The Documents Subpoena*

On January 7, 2014, the CFTC moved the court for an order compelling Plains All American to produce documents responsive to the November subpoena. Dkt. 11. Plains All American has already served written objections to the production, and the CFTC, as the party serving the subpoena,

may move for a court order enforcing the subpoena and compelling the production. *See* Dkt. 11, Ex. C (Plains All American's objections); FED. R. CIV. P. 45(d)(2)(B)(i). Plains All American objects to the documents on grounds similar to those discussed above, namely relevance, burdensomeness, redundancy, and potential disclosure of protected information. Dkt. 12 at 5–13.

The court has reviewed the documents subpoena and finds that it seeks evidence to establish deliverable supplies of WTI crude oil during the relevant period of the underlying litigation, evidence which is discoverable under Rule 26.[9] Further, the CFTC has generally limited its requests to documents relating to a narrow subject matter and within a short period of time. These are documents that are solely available to Plains All American and should be made available to the CFTC for prosecuting the underlying action. Regarding the disclosure of any protected information, the court reiterates that Plains has not demonstrated that the amended protective order is insufficient to shield its confidential or proprietary information from improper use. Lastly, the production of documents with certain confidential shipping data, when made pursuant to a valid subpoena, does not violate the ICA because the subpoena is "legal process" under the statute's government disclosure exception. Plains All American's objections to production are overruled, and the CFTC's motion to compel (Dkt. 11) is **GRANTED**.

---

[9] Plains All American contends in its response that the documents subpoena seeks information that is duplicative of documents that were produced to the CFTC in July 2010. Dkt. 12 at 9–10. However, after reviewing the documents requested in Attachment B to the subpoena, Dkt. 11, Ex. A at 7–8, the court agrees with the CFTC that the subpoena seeks additional, distinct information, including scheduling notices and nominations, that were not produced in 2010. The document requests in the November 2013 subpoena are therefore not duplicative of previous productions.

## IV. Conclusion

In conclusion, the court is mindful of the burdens placed on Plains to respond to the subpoenas in a relatively short period of time. However, the court is persuaded that the CFTC and Class Plaintiffs have provided reasonable and appropriate accommodations to Plains, and the plaintiffs have demonstrated a compelling need for additional non-party discovery in underlying litigation of national, and indeed international, import. In short, the benefits of the discovery in this case outweigh its burdens.

The motions for reconsideration (Dkts. 5, 17) are **GRANTED**, and the court's orders quashing the deposition subpoenas (Dkts. 2, 16) are **VACATED**. Plains's motions to quash (Dkts. 1, 13, and 15) are **DENIED**, and the CFTC's motion to compel (Dkt. 11) is **GRANTED**. Plains All American must produce documents within its possession, custody, or control that are responsive to the CFTC's documents subpoena, and Plains All American must produce a corporate representative or representatives and the four traders for depositions on or before January 31, 2014.

It is so **ORDERED**.

Signed at Houston, Texas on January 17, 2014.

_____
Gray H. Miller
United States District Judge